**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:12-cv-00308-MR
[CRIMINAL CASE NO. 3:07-cr-00211-MR-1]**

| | | |
|---|---|---|
| **MICHAEL D. PAHUTSKI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1], as amended [Doc. 9], and Respondent's Motion to Dismiss Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 19]. For the reasons that follow, Respondent's motion to dismiss will be granted and Petitioner's motion to vacate, as amended, will be denied and dismissed.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged by the grand jury in this District with twenty-one counts related to a mortgage fraud conspiracy. [Criminal Case No. 3:07-cr-00211, Doc. 117: Fourth Superseding Indictment (hereinafter "the

Indictment")].  In particular, the Indictment charged the Petitioner with numerous violations of various statutory provisions including mail fraud, wire fraud, bank fraud, and making false statements to banks, all in violation of 18 U.S.C. § 371.  Generally, Petitioner was charged with participating with others in a conspiracy which involved the preparation of false mortgage applications that were submitted to financial institutions; the applications included the preparation of false real estate appraisals, materially false HUD-1 statements, false preliminary title opinions, and false second deeds of trust.  In all, it was alleged that the mortgage conspiracy involved more than $15,000,000 and some 214 properties.

Petitioner was appointed counsel at his first appearance and later pled guilty without benefit of a plea agreement to the twenty-one counts that were alleged against him.  On March 3, 2009, Petitioner appeared with counsel for his Plea and Rule 11 hearing.  After being placed under oath, Petitioner stated that he had reviewed each of the charges in the Indictment with his attorney and that he understood the charges and the maximum penalties he faced upon conviction.  Petitioner also consented to allow the Government to provide a summary of the charges and the potential terms of imprisonment and fines that he faced if convicted. Petitioner again confirmed that he had carefully reviewed each of the

charges and penalties with his attorney and that he understood the Government's summary of the charges and penalties that were presented during the Rule 11 colloquy.

In addition, Petitioner averred that he had reviewed how the Guidelines might apply in his case, that he understood the Guidelines and that his sentence could not be determined until the District Court had reviewed the presentence investigation report (PSR) and the parties had an opportunity to comment on the contents of the PSR. Petitioner stated that he understood that the District Court would have to consider the Guidelines but that Petitioner could receive a sentence that was either higher or lower than recommended by the Guidelines and that he could receive a sentence up to the statutory maximum. Petitioner acknowledged that even if his sentence was more severe than he expected he would still be bound by his guilty plea and would have no right to withdraw it. Petitioner further acknowledged that as part of his sentence he may be ordered to pay restitution to the victims of the conspiracy.

Petitioner expressly agreed that by pleading guilty he was waiving his right to have the Government prove his guilt beyond a reasonable doubt in a jury trial or to appear with an attorney to contest the charges at trial. Finally, Petitioner swore that no one had promised him any particular

sentence, that he was satisfied with the services of his attorney, that he was pleading guilty of his own free will, that he had discussed any possible defenses to each of the charges with his attorney, and that he still wished to plead guilty. The Magistrate Judge prepared an Acceptance and Entry of Guilty Plea form reflecting the Court's questions and Petitioner's responses thereto, which was presented in open court and signed by all parties, including Petitioner. [Id., Doc. 188]. Petitioner's plea of guilty was accepted after the Court found that his decision to plead guilty was both knowingly and voluntarily entered. [Id., Doc. 291: Tr. of Plea and Rule 11 Hearing].

The probation officer prepared a draft of the PSR and each party filed written objections thereto. Specifically, the Government objected to the probation officer's calculation of Petitioner's criminal history points. Petitioner objected to the probation officer's description of the offense conduct and the calculation of the proposed loss amount, which was in excess of $3,500,000. Further, Petitioner objected to the recommended restitution amount, arguing that he had not agreed to such restitution as part of his guilty plea and the amount had not been found by a jury beyond a reasonable doubt. [Id., Doc. 333: Government's Objection; Doc. 334: Petitioner's Objection].

A revised PSR was prepared and served on the parties. The probation officer calculated an adjusted offense level of 39, which was decreased three levels for acceptance of responsibility for a total offense level of 36. Petitioner was determined to have a Level I criminal history category based on a prior conviction in this District for one count of conspiracy to defraud the Internal Revenue Service in 1996 for which he had received three years' probation. Based on these calculations, the probation officer recommended a Guideline range of 188 to 235 months in prison, a fine of between $20,000 and $24,000,000, and mandatory restitution to the financial institutions which suffered loss in the mortgage scheme in the amount of $3,563,123.

On May 6, 2011, Petitioner appeared with counsel for his sentencing hearing. Petitioner orally moved to withdraw his guilty plea and the Court considered arguments from both Petitioner himself and from Petitioner's counsel. After considering argument and examining the factors in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), the Court found that Petitioner had failed to satisfy his burden of demonstrating a "fair and just reason" to allow him to withdraw his plea and his motion was denied.

The Court then proceeded to consider evidence regarding the amount of loss that was caused by the conduct of Petitioner and his co-

defendants in an effort to determine the appropriate amount of restitution. After hearing from the parties regarding an appropriate sentence, the Court sentenced Petitioner to 60 months' imprisonment on Count 1; 228 months' imprisonment on Counts 2-14, 16, 18, 20, 22, 23 and 24; and 120 months' imprisonment on Count 27, with all such terms to run concurrently for a total of 228 months of active imprisonment. Petitioner was also ordered to pay $3,563,127.27 in restitution to the financial institutions, jointly and severally with the two co-defendants named in the Indictment. [Id., Doc. 398: Judgment in a Criminal Case].[1]

Petitioner filed an appeal to the United States Court of Appeals for the Fourth Circuit. On appeal, Petitioner's appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), contending that there were no meritorious issues for appeal, but arguing that the District Court erred in denying Petitioner's motion to withdraw his guilty plea at sentencing and in calculating the loss amount involved in the mortgage fraud conspiracy. Appellate counsel further contended that Petitioner received ineffective assistance of trial counsel. Petitioner filed a supplemental *pro se* brief, raising the same arguments as identified by appellate counsel. The Court rejected Petitioner's first two arguments. As

---

[1] The financial institutions that were identified as victims of the mortgage scheme are First Charter, Fannie Mae, nBank, and Radian.

for the ineffective assistance of counsel claim, the Court concluded that such claims should be pursued through a § 2255 proceeding.  See United States v. Pahutski, 464 F. App'x 171 (4th Cir. 2012) (unpublished).

In a supplemental *pro se* brief, Petitioner raised additional claims that the Government's prosecution of him was malicious and vindictive; that his constitutional rights to due process and a fair and speedy trial were violated; and that he was not permitted to examine all of the evidence against him. The Court likewise found no merit in these arguments and affirmed his criminal judgment in all respects.  See id.  This action followed.

## II.     STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to examine the § 2255 motion, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner may be entitled to any collateral relief. The Court has considered the record in the matter and applicable authority and concludes that the disposition of the Government's motion to dismiss can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ground One: Fatal Variance

Petitioner first argues that this Court exceeded its authority in imposing his judgment based on a charge that was not part of the original Indictment. Specifically, he contends that his judgment reflects that he was sentenced for conspiracy to defraud the United States, thus constructively amending the Indictment and creating a fatal variance. [Doc. 9: Amended Motion at 4-5].

Petitioner did not raise this claim on direct appeal, either through his appellate attorney or in his supplemental *pro se* brief. Consequently, Petitioner has procedurally defaulted the claims in this § 2255 proceeding unless he can demonstrate cause and prejudice or that he is actually innocent of the charges to which he pleaded guilty and was later convicted. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)) (internal citation omitted); see also Massaro v. United States, 538 U.S. 500, 504 (2003) (discussing procedural default) (citing United States v. Frady, 456 U.S. 152, 167-168 (1982) and Bousley, supra at 621-622).

Petitioner has failed to demonstrate that he should be entitled to present this claim on collateral review. First, Petitioner cannot demonstrate sufficient cause to excuse his procedural default. Moreover, his solemn guilty plea to the charges before the Magistrate Judge, which plea was later accepted by this Court as both knowingly and voluntarily entered, foreclose any claim that he is actually innocent and preclude his present attack on the legality of his judgment. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1997) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). Being unable to demonstrate cause or actual innocence, Petitioner has procedurally defaulted this claim, and it is therefore dismissed.

Even considering the substance of Petitioner's claim, however, the Court finds it to be without merit. Petitioner has failed to demonstrate any prejudice or unfair surprise resulting from the alleged variance. See United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) (holding that "[a] mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the

preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense"). Petitioner was charged in Count 1 of the Indictment with a conspiracy to commit an offense against the United States, namely, mail, wire, and bank fraud, in violation of 18 U.S.C. § 371. Petitioner pled guilty to this offense, and he was sentenced to a term of 60 months in prison with such term to run concurrently to his sentence of 228 months on the other counts to which he pled guilty. The fact that the Judgment clerically refers to a separate provision of § 371 (conspiracy to defraud the United States) does not create any unfair surprise or prejudice to Petitioner.

For these reasons, this claim will be denied and dismissed.

## B. Ground Two (Part One): Ineffective Assistance of Trial Counsel

In this collateral proceeding Petitioner raises numerous claims (40 against his trial counsel and 18 against his appellate counsel) of ineffective assistance of counsel. For the reasons set forth below, Petitioner's claims are without merit.[2]

---

[2] In his Petition, Petitioner claims that "[t]he Fourth Circuit has already recognized the merits of [his] claims and referred them back to this Court …." [Doc. 9 at 11]. Contrary to Petitioner's claim, the Fourth Circuit did not recognize "the merits" of his claims of ineffective assistance of counsel; rather the Fourth Circuit merely found that in "the absence of conclusive evidence of ineffective assistance of counsel on the face of the record, such claims are not cognizable on direct appeal." Pahutski, 464 F. App'x at 172

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in Strickland. In regard to the second prong, Petitioner must demonstrate that he was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297

(citing United States v. King, 119 F.3d 290, 295 (4th Cir. 1997)). Moreover, the Court noted that "[b]ecause the record does not conclusively establish *or even suggest* that trial counsel rendered ineffective assistance, we decline to consider this claim on direct appeal." Id. (emphasis added).

(4th Cir. 1992) (citing <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983)).  If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1297 (citing <u>Strickland</u>, 466 U.S. at 697).  In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different.  <u>See</u> <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'"  <u>Id.</u> (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993)).

### 1.    <u>Failure to Investigate</u> (Claim 1)

Petitioner argues that his court-appointed trial counsel was ineffective by failing to investigate the applicable statutes of limitations and essential elements of the charges in his Indictment.  [Doc. 9 at 12].  Petitioner contends that had he known that these charges were time barred, he would not have pled guilty.

The Indictment alleged that the mortgage fraud conspiracy, or "Flip Scheme," with which Petitioner was charged in participating, began in or about January 2001 and continued into September 2002.  [Criminal Case No. 3:07-cr-00211, Doc. 117: Fourth Superseding Indictment at 1].  The

Indictment alleges that through this "Flip Scheme" Petitioner conspired to defraud certain financial institutions through the preparation and submission of fraudulent mortgage applications, all in violation of 18 U.S.C. § 3293. That statute provides that no person may be prosecuted for violation of this statute unless the Indictment is returned within ten (10) years after the commission of the offense. As noted, Petitioner was alleged to have violated, and pled guilty to violating, § 3293 beginning in 2001. He was charged in the Fourth Superseding Indictment on November 6, 2008. Accordingly, Petitioner's prosecution was timely, and his trial counsel did not commit <u>Strickland</u> error for failing to file a meritless challenge to the charges in the Indictment based on the statute of limitations.

Petitioner's contention that his counsel failed to review the elements of the charges in the Indictment is also without merit. As discussed herein, Petitioner offered sworn testimony during his Rule 11 hearing that his attorney had thoroughly reviewed the elements of each count in the Indictment with him. Based on Petitioner's sworn statements during his Rule 11 hearing, Petitioner's conclusory statement here must fail.

### 2. <u>Failure to Challenge Interrogation</u> (Claim 2)

Petitioner asserts that after he was arrested on these federal charges, he invoked his Fifth Amendment right to remain silent. Petitioner

contends that nevertheless individuals claiming authority as U.S. Postal Employees forced him to answer questions and to sign unidentified documents. [Doc. 9 at 14].

Petitioner's claim that he was forced to "sign certain documents" or that his right to remain silent was violated fails in light of his sworn statements during his Rule 11 colloquy where he averred that he had discussed any possible defenses to the charges in his Indictment and that he was satisfied with the services of his attorney. Furthermore, the Magistrate Judge clearly explained that Petitioner could contest the evidence, any evidence that may have been obtained by the Government, and that the Government would have to prove his guilt beyond a reasonable doubt. Petitioner, however, knowingly and voluntarily agreed to forego his constitutional right to challenge the Government's evidence against him in pleading guilty to the charged offenses. Accordingly, Petitioner's argument is deemed to be waived. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) (providing that a knowing and voluntary guilty plea waives non-jurisdictional errors, which includes constitutional violations which occurred before the entry of the guilty plea).

In addition, Petitioner does not make any credible assertion that but for his counsel's alleged failure to pursue a challenge to the interrogation or

the procurement of his signature on "certain documents," Petitioner would have elected to plead not guilty and proceeded to trial. Accordingly, this claim will be denied.

### 3. <u>Failure to Share Court Filings</u> (Claim 3)

Petitioner argues that between October 9, 2007 and March 17, 2008, there were twenty-eight documents that were filed with the Court but that these documents – which Petitioner identifies as motions, indictments, oral orders, and other assorted orders – were never shared with him by his counsel. [<u>Id.</u> at 14].

This argument again requires the Court to examine a familiar issue, namely, the effect of Petitioner's guilty plea in this collateral proceeding. As the Court has found, Petitioner's guilty plea was knowingly and voluntarily entered. Furthermore, Petitioner completely fails to establish any right to relief under <u>Strickland</u> because he states only in the most conclusory fashion that the alleged withholding of these documents entitles him to relief. Petitioner fails to identify, however, what information in these documents could have been of significance to him or would have caused him to forego his guilty plea in favor of trial. This claim must therefore be denied.

## 4.  **Failure to Challenge Arraignment** (Claims 4 and 37)

Next, Petitioner asserts that he had no counsel present at his first arraignment and that the transcripts from the hearing have been intentionally withheld from him by the Court and the Government. Additionally, Petitioner argues that he was threatened by the Court to plead guilty or that he would "face a very long prison sentence, effectively denying the Movant his right to proceed to trial."  [Id. at 16-17].  Petitioner contends that his counsel's failure or refusal to obtain and share these transcripts deprived him of important information which could have reduced his sentence or been helpful on appeal.  These allegations present a bitter distortion of the record at best and an intentional misrepresentation at worst.

Petitioner was arraigned on the first Bill of Indictment on October 12, 2007, and the docket entry reflects that he was present with his court-appointed counsel, Peter Adolf.  The docket entry further reflects that Petitioner was released on an unsecured, one million dollar bond and that the Court entered a scheduling order to govern the progress of his case. These events are further confirmed by the transcript of Petitioner's arraignment, which – contrary to Petitioner's argument – is not missing but is in fact filed in the record of his criminal case.  Finally, Petitioner's fanciful

contention that the Magistrate Judge threatened him with a long prison sentence if he did not plead guilty is simply erroneous. The Magistrate Judge reviewed each of the charges in the Indictment and noted the maximum possible sentences that Petitioner faced. When asked how Petitioner would elect to plead, Petitioner's counsel entered pleas of not guilty on his behalf. [Criminal Case No. 3:07-cr-00211, Doc. 296: Tr. of Arraignment]. Petitioner apparently makes reference to the Court's statement, which was no doubt true, that Petitioner appeared to be facing a great deal of time based on the charges and the alleged loss amounts involved in the conspiracy, which the Court followed up with stating: "So you would do well to find some way to cooperate or get acquitted." [Id. at 15]. This statement simply presents the very information that Petitioner averred he understood during his Rule 11 colloquy – namely, that he could proceed to trial or he could knowingly waive that right and instead enter a plea of guilty. Petitioner's characterization of this statement as a "threat" by the Magistrate Judge is without any merit.

Based on the foregoing, this claim must be denied.

### 5. <u>Failure to Prepare for Sentencing</u> (Claims 5, 6, and 8)

Petitioner claims that his counsel failed to compile or present evidence that would have mitigated his sentence and that this evidence

was in the possession of the Government and nBank Mortgage, one of the fraud victims, and the Mecklenburg County and the Cabarrus County Register of Deeds.  [Id. at 16-17].  Petitioner also contends that his counsel intentionally withheld evidence that may have affected his decision to plead guilty, including "names, dates, locations, addresses and records of financial transactions that were exculpatory to" Petitioner, as well as transcripts of previous hearings in his case.  [Id.].

Petitioner returns to familiar territory here by again challenging the knowing and voluntary nature of his guilty plea.   First, the argument is foreclosed by the Fourth Circuit's finding that the challenge to this Court's denial of his motion to withdraw his guilty plea did not entitle him to relief. During Petitioner's sentencing hearing, the Court specifically found that Petitioner had provided no fair and just reason to support his late motion to withdraw his guilty plea and that his guilty plea was knowingly and voluntarily entered. The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Put another way, a petitioner "will not be allowed to recast, under the guise of a collateral attack, questions fully considered on direct appeal." Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).  The record is clear.  Petitioner openly admitted

his guilt, and he did so knowingly and voluntarily. The fact that there *may* have been some unspecified evidence that mitigated the extent of his guilty is, at this point, irrelevant. This claim must fail.

In addition, this claim must fail because Petitioner merely presents it in a conclusory fashion. He has done nothing more than assert that there was <u>Strickland</u> error. He has failed to identify the substance of any of these documents and only generically contends that these documents would have changed the outcome of his proceeding. This simply is not sufficient to establish a <u>Strickland</u> claim. Accordingly, these claims will be denied and dismissed.

### 6.  <u>Speedy Trial</u> (Claim 7)

Petitioner argues that his counsel was ineffective in failing to file a motion to dismiss the Indictment on the ground that his statutory right to a speedy trial was violated. [Doc. 9 at 19].

Under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq.</u>, a defendant must be brought to trial within seventy (70) days from the filing of the Indictment or from the date of his initial appearance, whichever date is later. 18 U.S.C. § 3161(c). There are, however, a host of exclusions that may apply to exclude a defendant's case from the Speedy Trial Act, including where the Court finds that the ends of justice are served by a

continuance and such outweighs the public interest and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

If no exception applies and the Speedy Trial Act is violated, then upon motion of the defendant, the Court must dismiss the indictment. 18 U.S.C. § 3162(a)(2). In determining whether to dismiss the indictment under the Speedy Trial Act with or without prejudice, the Court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." Id. A defendant's failure to move for dismissal prior to trial or entry of a guilty plea constitutes a waiver of the right to dismissal under the Act. Id.

A review of the criminal docket leads this Court to conclude that there was no violation of the Speedy Trial Act as appropriate orders were entered which excluded time from the 70-day period. Therefore, Petitioner cannot satisfy either prong of Strickland. Petitioner's first indictment was filed on August 29, 2007, and he was named as the lone defendant and charged with three counts. On November 16, 2007, a superseding indictment was filed which named an additional defendant, Victoria Sprouse, and included several new charges related to the mortgage fraud. The Court granted the

parties' joint motion to continue the trial on the second superseding indictment and specifically found that the ends of justice would be served by the continuance. On March 20, 2008, a second superseding indictment was filed which named Petitioner and included still more charges against Petitioner and named additional defendants. A trial was scheduled for the jury term beginning June 9, 2008. The Court, noting the complex nature of the alleged mortgage fraud and the time needed for discovery and preparation of pre-trial motions, granted a motion to continue due to the recent appointment of an attorney for new co-defendant Gregory Rankin. [See Criminal Case No. 3:07-cr-00211, Doc. 78: Order, filed June 6, 2008, at 2-3 (citing 18 U.S.C. § 3161(h)(8)(B)(iv) (findings ends of justice served and outweighing best interest of public or defendants to a speedy trial)]. The Court specifically found that the time allotted under the Speedy Trial Act had not run for Petitioner at that time, or any other defendant and that due to the common nature of the alleged mortgage fraud all defendants were joined for trial. [Id. at 3]. Without objection by any party, the Court extended the time to file pretrial motions until October 18, 2008, after finding that this amount of time was necessary to prevent a miscarriage of justice. [Id. at 4 (citing § 3161(h)(8)(B)(I)]. The Court further found that due

to the complexity of the case, a peremptory setting was appropriate and the delay excludable under the Speedy Trial Act. <u>See</u> § 3161(h)(8)(B)(iv).

On August 12, 2008, the grand jury returned the Third Superseding Bill of Indictment. [Criminal Case No. 3:07-cr-00211, Doc. 88]. At the time this Indictment was returned, the time under the Speedy Trial Act was stayed based on the Court's June 6th continuance order. Three months later, on November 12, 2008, and still within the stay of the Speedy Trial Act, the grand jury returned the Fourth Superseding Bill of Indictment. [<u>Id.</u>, Doc. 117]. Thereafter, the case was set for trial on March 23, 2009. [<u>Id.</u>, Doc. 134]. Petitioner's co-defendant Victoria Sprouse immediately moved for a continuance of the trial date. [<u>Id.</u>, Doc. 136]. Petitioner's counsel did not object to Sprouse's motion, noting that he was counsel of record in another matter which had been peremptorily set for trial on April 6, 2009, and that he could not try both cases simultaneously. [<u>Id.</u>, Doc. 141]. On December 29, 2008, Sprouse's motion to continue was denied in an effort to preserve Petitioner's and his co-defendants' right to a speedy trial. Thus, the matter remained peremptorily set for March 23, 2009. [<u>Id.</u>, Doc. 143: Order].

On February 20, 2009, Petitioner filed a notice of his intent to change his plea from not guilty to a plea of guilty without a written plea agreement

and his plea was accepted on March 3, 2009. [Id., Doc. 172: Notice of Intent to Change Plea; Doc. 188: Acceptance and Entry of Guilty Plea].

Based on the foregoing, the Court concludes that there was no violation of the Speedy Trial Act because each continuance resulted in the proper exclusion of time from the 70-day period. Moreover, any motion to dismiss the indictment pending against Petitioner would no doubt have been denied due to the seriousness of the charges. In the alternative, any such order dismissing the indictment would have been without prejudice because of the ever growing complexity of the case against Petitioner as reflected by the increasing number of charges and defendants in the indictments. Therefore, Petitioner's argument herein is denied and dismissed.

## 7. <u>Failure to Advise on Possible Sentence</u> (Claims 9 and 10)

Petitioner next argues that his attorney failed to properly advise him on the possible sentence he could face following a guilty plea and that his counsel promised that he would receive a lighter sentence than he ultimately received. This argument, however, is belied by Petitioner's sworn statements, which the Court has reviewed at length herein, that were made during his Rule 11 colloquy. For the reasons previously stated, the

Court finds that the truth of his sworn statements precludes the relief that he seeks.

### 8. Failure to File Timely Motion to Withdraw Guilty Plea (Claims 11, 12, 20, 21 and 39)

Next, Petitioner argues that he is entitled to relief under <u>Strickland</u> because his attorney ignored his repeated requests to file a motion to withdraw his guilty plea.  These claims plow the same ground which Petitioner has continually pressed regarding the knowing, voluntary and intelligent nature of his decision to accept responsibility for his criminal conduct and plead guilty as charged.  As the Court observed during the hearing on Petitioner's motion to withdraw his guilty plea, Petitioner simply failed to present a fair and just reason to support his motion to withdraw. Moreover, the bases cited in his untimely motion to withdraw are directly contradicted by his sworn statements during his Rule 11 hearing. Petitioner has failed to undermine the finding that his guilty plea was in fact validly entered and accepted.  Thus, for the reasons previously articulated, the Court denies relief on these claims.

### 9. Private Meetings (Claim 13)

Petitioner argues that he is entitled to <u>Strickland</u> relief because his attorney met with counsel for the Government without Petitioner's

knowledge or consent. Petitioner cites to no authority supporting the proposition that such meetings were improper or otherwise constituted ineffective assistance, and this Court is aware of no such authority. Indeed, it is counsel's professional obligation to zealously represent his client, and meeting with the prosecution is part of the fulfillment of that responsibility.

Petitioner's claim also fails because he does not indicate that had he known about such "unauthorized" meetings he would have elected not to plead guilty and proceeded to trial. Finally, as the Government notes, Petitioner was never offered a plea agreement, as evidenced by the Government's statement at the outset of his Rule 11 colloquy. [Criminal Case No. 3:07-cr-00211, Doc. 291: Tr. of Rule 11 hearing at 2]. Thus, Petitioner's unsupported contention that there were "under the table negotiations" which prejudiced him is without merit.

### 10.    <u>Failure to Explain Other Options</u> (Claim 14)

Petitioner argues that his counsel failed to explain other possible options before Petitioner entered his straight-up plea of guilty. As just noted, the Government did not offer a written plea agreement to Petitioner, and it was under no obligation to offer such a plea. From the record before the Court, and as was explained to Petitioner during his Rule 11 colloquy,

he had the option of pleading guilty as charged or being tried before a jury. He knowingly and voluntarily chose the former. Therefore, this claim must fail.

### 11.  <u>Failure to Raise FDIC Defense</u> (Claims 15 and 31)

Petitioner first contends that his counsel was ineffective in failing to present his claim that he never did business with nBank, N.A. but rather that he only worked with nBank Mortgage, a different entity. Petitioner also contends that his counsel was ineffective in failing to challenge nBank's status as an entity that was insured under the Federal Deposit Insurance Corporation (FDIC).

The Fourth Superseding Bill of Indictment specifically alleged that Petitioner participated in a mortgage fraud scheme which defrauded nBank, N.A., which the Indictment defined collectively as nBank, N.A. *and* nBank Mortgage Company. During his Plea and Rule 11 hearing, Petitioner specifically and unequivocally admitted that he was in fact guilty of participating in the scheme as alleged in the counts charged against him, which included his criminal actions relating to the above-mentioned businesses. [Criminal Case Bi, 3:07-cr-00211, Doc. 117: Fourth Superseding Indictment at 5]. Thus, Petitioner conceded that he harmed both nBank, N.A., and nBank Mortgage Company. Petitioner's attempt to

challenge his knowing and voluntary decision to enter his guilty plea on this basis is rejected.

### 12. <u>Appellate Rights</u> (Claims 16 and 35)

Petitioner here claims that he is entitled to relief under <u>Strickland</u> because counsel erroneously instructed him that he would have the opportunity to contest his charges during a "trial on appeal." [Doc. 9, at 27, 38]. This assertion, however, is refuted by the record. Petitioner was informed in no uncertain terms that he did in fact have a right to a trial on the merits and that his opportunity to contest the charges would have to be at trial before the District Court. After a properly conducted Rule 11 hearing has concluded and a defendant's solemn plea of guilty accepted, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." <u>Blackledge</u>, 431 U.S. at 74. This claim is therefore denied.

### 13. <u>Scheduling Issues</u> (Claim 17)

Continuing his conclusory attacks on trial counsel, Petitioner further argues that his counsel was too busy or preoccupied with his law practice and his involvement with his child's little league team to provide effective assistance of counsel. [<u>See</u> Doc. 9 at 24-25, 27-28]. In particular,

Petitioner complains that he was denied access to the trial of his co-conspirator, Victoria Sprouse, due to conflicts in counsel's schedule. This claim is baseless. The undersigned specifically observed Petitioner in the courtroom gallery throughout Sprouse's trial. Thus, Petitioner's claim that his counsel's schedule somehow prevented him from attending the trial is without merit and is denied.[3]

### 14. <u>Failure to Explain Mens Rea</u> (Claim 18)

Petitioner next claims that his trial counsel failed to explain to him the required *mens rea* for each crime alleged in the Indictment. This self-serving allegation is contradicted by Petitioner's sworn responses at the Rule 11 hearing that he understood the charges against him, including each element of those charges, and that he had sufficient time to discuss the same with his attorney. This claim for relief is therefore rejected.

### 15. <u>Failure to Review Sentencing Evidence</u> (Claim 19)

Petitioner next claims that trial counsel failed to review the evidence the Government submitted to the Court in support of its requested

---

[3] In this claim, Petitioner further asserts that testimony given during the Sprouse trial prejudiced the undersigned against Petitioner, and that "[f]ailure to guarantee Petitioner's right to due process on these issues [resulted] in ineffective assistance of counsel." [Doc. 9 at 27]. Other than rank speculation regarding the Court's alleged bias, and counsel's failure to address such alleged bias, Petitioner has again failed to alert this Court to any basis for relief under <u>Strickland</u>. Accordingly, this claim too will be denied.

sentence.  Specifically, Petitioner argues that despite receiving additional time to prepare for his sentencing, counsel "NEVER reviewed the evidence with or without movant."  [Doc. 9 at 25 (emphasis in original)].

Petitioner's claim is contradicted by the record.  At the outset of the sentencing hearing, Petitioner's counsel explained that he had been able to review the Government's evidence, although it was voluminous.  The transcript of the sentencing hearing also makes clear that counsel thoroughly reviewed the discovery, and that Petitioner's within-Guidelines sentence was not adversely affected by any suggested lack of review or preparation.  Petitioner's contention to the contrary is without merit.

### 16.  <u>Prejudicial Comments to Newspaper</u> (Claim 22)

Petitioner argues, without further support, that his counsel was ineffective when he told a newspaper reporter for the <u>Charlotte Observer</u> that that Petitioner was guilty of mortgage fraud.  Petitioner has not provided any evidence that this actually occurred; accordingly, his claim fails for his inability demonstrate deficient performance by counsel.  In any event, however, Petitioner has failed to demonstrate that these comments negatively affected the Court's view of Petitioner in sentencing him to a sentence within the Guidelines range.  Most importantly, however,

Petitioner *admitted* that he was guilty of mortgage fraud when he *pled guilty.* Accordingly, Petitioner's claim is without merit.

### 17. <u>Jencks Material and Conflict of Interest</u> (Claim 17)

Next, Petitioner argues that his counsel was ineffective in failing to seek the production of <u>Jencks</u> material and by failing to argue that U.S. Attorney Anne Tompkins had a "clear of conflict of interest" in the case. [Doc. 9 at 31].

Petitioner's first claim must fail. The Jencks Act, codified at 18 U.S.C. § 3500 <u>et seq.</u>, requires the Government to produce statements that relate to the subject matter of a witness's direct examination. By pleading guilty, Petitioner knowingly waived his right to have evidence presented by the Government on direct examination at trial. Therefore, this claim is without merit.

Second, regarding the alleged conflict of interest, U.S. Attorney Tompkins was recused from this matter. The Government's pleadings have been executed in the name of David Brown as special attorney for the United States, pursuant to 28 U.S.C. § 515. Thus, Petitioner has failed to demonstrate that counsel delivered deficient performance by failing to argue these meritless issues.

### 18.    **Inexperienced Counsel** (Claim 24)

Petitioner makes yet another challenge to his guilty plea by arguing that his trial counsel allegedly confessed that he had no experience in defending against a charge of bank fraud.  Petitioner argues that "this lack of experience culminated in counsel's rendering ineffective assistance" because his counsel refused to present a vigorous defense.  [Doc. 9 at 31].

Petitioner testified during this Rule 11 hearing that he understood each of the charges against him, including the charge of bank fraud, that he was in fact guilty of the charges, that he was satisfied with the services of his attorney, and that he was voluntarily and knowingly waiving his right to contest the charges.  For the foregoing reasons, this argument will be denied.


### 19.    **Failure to Continue Sentencing** (Claim 25)

Petitioner next argues that counsel was ineffective for failing to move for a continuance of the sentencing hearing following the Government's submission of various sentencing exhibits several days prior to the hearing. In so arguing, Petitioner appears to be referencing the affidavit of the case agent and related loss amount spreadsheets and interview reports referenced in her affidavit and the transcripts of earlier testimony from the

president of nBank. Petitioner also argues that the loss amount spreadsheet should not have been used against him at sentencing because it was also used during the trial of Petitioner's co-defendant Sprouse, for whom the Court ordered a new trial.

Regarding the failure to move to continue, the transcript of the sentencing proceeding makes clear that counsel had reviewed the material and was prepared to respond to it. The transcript also indicates that he reviewed this evidence with Petitioner. Thus, Petitioner cannot demonstrate deficient performance on the part of counsel. Further, Petitioner has not alleged that the submitted evidence was in any way incorrect, untruthful, or inaccurate. Thus, he has not demonstrated the prejudice <u>Strickland</u> requires.

Petitioner's argument that the loss spreadsheet should not have been used against him in light of this Court's order of a new trial for <u>Sprouse</u> is simply frivolous.[4] The spreadsheet was properly admitted and relied on at Petitioner's sentencing. Accordingly, this claim will be denied.

---

[4] The Court further notes that the Order granting Sprouse a new trial was reversed by the Fourth Circuit Court of Appeals. <u>See</u> <u>United States v. Sprouse</u>, 517 F. App'x 199 (4th Cir. 2013).

## 20. "Wrong" or "Ill-Advised" Statements (Claim 27[5])

Petitioner next blames counsel for Petitioner's decision to speak on his own behalf at the start of the sentencing hearing to move to withdraw his guilty plea. This argument is without merit, as it is directly contradicted by the record. The transcript makes clear counsel advised Petitioner of the consequences of making the motion and speaking on his own behalf. Further, the record is devoid of any evidence that Petitioner's statement prejudiced him in any way. While Petitioner's motion was denied, the sentence was not any greater as a result. The Court still awarded him a three-level reduction for acceptance of responsibility. Accordingly, this claim is wholly without merit.

## 21. Failure to File Severance Motion (Claim 28)

Next, Petitioner faults counsel for refusing to file a motion to sever Petitioner's case from his co-defendant Sprouse's case. Petitioner has forfeited this claim as he abandoned his right to move to sever after his guilty plea was accepted. Again, Petitioner expressed his sworn understanding that he had discussed any possible defenses with his counsel and that he had knowingly decided to waive his constitutional right

---

[5] Petitioner failed to include a twenty-sixth claim for relief.

to contest the evidence at trial. Accordingly, as Petitioner did not proceed to trial, a motion to sever would necessarily have been meritless.

## 22. **Failure to File Objections to the PSR** (Claim 29)

Petitioner next complains that counsel's failure to file objections to the PSR "shows clearly the lack of preparation by counsel." [Doc. 9 at 34]. Counsel, however, did file objections to the PSR, and such objections were addressed by the Court during sentencing. [Criminal Case No. 3:07-cr-00211, Doc. 334: Defendant's Objections]. Petitioner's claim that his counsel failed to file proper or effective objections is simply untrue and will be denied.

## 23. **Admission of Guilt and Testimony** (Claims 30 and 32)

Petitioner contends here that his counsel made damaging admissions regarding his guilt when Petitioner moved to withdraw his guilty plea during the beginning of his sentencing hearing. Further, Petitioner avers that his counsel "testified" adversely to his interests during sentencing. [Doc. 9 at 30, 32]. As the undersigned presided over this sentencing hearing, the Court has no trouble concluding that his counsel did not "testify" against Petitioner. Petitioner pled guilty and it was he who admitted under oath to his guilt to all of the charges. This claim is simply without merit and will be denied.

### 24. __Failure to Discuss PSR__ (Claim 33)

Petitioner next alleges that counsel failed to discuss or consult with him about the PSR or its consequences as related to his guilty plea. This claim is contradicted by Petitioner's earlier representation to the Court during sentencing that he had reviewed the PSR and with his attorney. For this reason this claim must be denied.

### 25. __False Claims at Sentencing__ (Claim 34)

Petitioner challenges counsel's failure to object to what Petitioner claims were the Government's false statements to the Court concerning Petitioner's prior federal conviction and assistance to the Government in an unrelated 1996 case. Petitioner, however, cannot demonstrate any prejudice from counsel's actions. Notwithstanding his claim that this 1996 conviction "was a huge determining factor in the enhancements used by Judge Reidinger," the Court specifically declined to upwardly depart, as requested by the Government, for this earlier conviction. Because Petitioner is unable to demonstrate prejudice, this claim fails.

### 26. __Refusal to Investigate and Present Evidence of Innocence__ (Claim 36)

In his thirty-sixth claim, Petitioner alleges that counsel was ineffective in his failure to investigate or present evidence establishing Petitioner's

innocence and everyone else's guilt, as well as evidence showing collusion against Petitioner. Petitioner does not identify what this evidence is or how it establishes his innocence. Regardless, Petitioner's hope for relief is foreclosed by his guilty plea. He knowingly and voluntarily admitted that he was guilty of each and every charge against him. In any event, Petitioner has not demonstrated prejudice, as he has not shown how this evidence would have rendered his guilty plea involuntary. This claim is denied.

### 27. <u>Suppression of Evidence Regarding Co-Conspirator's Status as a Ringleader</u> (Claim 39)

Petitioner next contends that he is entitled to relief under <u>Strickland</u> because his counsel colluded with the Government to suppress evidence that his co-conspirator, Stephen Hawfield, was the true ringleader of the Flip Scheme conspiracy.

Petitioner was assessed a three-level enhancement for playing a managerial role in the fraud. While Petitioner argues that he was wrongly identified as a "ringleader" and that it was Hawfield who "recruited, organized, manipulated and operated the entire scheme," [Doc. 9 at 40], his argument ignores the fact that the Guidelines specifically contemplate that there can be more than one leader, organizer or manager. <u>See</u> U.S.S.G. § 3B1.1 app. note 4. In fact, the Court was well aware from the

evidence that Hawfield was the leader of the conspiracy, <u>see</u> U.S.S.G. § 3B1.1(a), but that Petitioner was a manager of the activities of the conspiracy, <u>see</u> U.S.S.G. § 3B1.1(b). Petitioner, as the mortgage broker who arranged the fraudulent financing, was the "hub of the wheel" of the conspiracy put into motion by Hawfield. Petitioner's effort to minimize his role here is yet another challenge to his guilty plea which admitted to all of the material elements of the charges in the Indictment. Moreover, Petitioner's unsupported assertion that he has "additional evidence" of this claim is unavailing. He fails to even indicate what this exculpatory evidence might be.

Petitioner admitted to all of the material elements of his crimes when he pled guilty. The PSR, which the Court accepted as reliable and convincing, sets forth his offense conduct, which clearly shows that his role in the conspiracy warranted the three-level enhancement under U.S.S.G. § 3B1.1(b). Petitioner's attempts to minimize his role in the conspiracy through this collateral proceeding or to cast blame on a co-conspirator do not support an argument that counsel was ineffective. Petitioner has failed to carry his burden that he is entitled to relief under <u>Strickland</u>. Therefore, this claim will be denied.

### 28. __Omnibus Claim__

In his final claim of ineffective assistance of trial counsel, Petitioner rehashes his argument that the Indictment was insufficient, that his sentence was illegal, and that all of his charges would have been dismissed had his counsel performed effectively before Petitioner decided to enter his guilty plea. These arguments have been addressed throughout this decision, and Petitioner's attempt to renew the arguments in a conclusory fashion must fail.

### C. Ground Two (Part Two): Ineffective Assistance of Appellate Counsel

Claims challenging the performance of appellate counsel are considered under the same Strickland standards that apply to trial counsel. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Thus, in order to present a meritorious claim, Petitioner has the burden of proving that his counsel's performance fell below an objective standard of reasonableness and that Petitioner suffered resulting prejudice. Strickland, 466 U.S. at 688, 694.

On habeas review, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "Effective assistance of counsel on appeal does

not require the presentation of all issues on appeal that may have merit"; rather, counsel is afforded "the presumption that he decided which issues were most likely to afford relief on appeal. . . ." Lawrence, 517 F.3d at 709 (quoting Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Lawrence, supra (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Petitioner alleges eighteen instances of ineffective assistance of counsel by his appellate counsel, including (1) that counsel failed to investigate and raise what Petitioner believes were meritorious claims on appeal (Claims 1, 2, and 12); (2) that counsel failed to communicate with Petitioner during the pendency of his appeal (Claims 3, 4, 16); (3) that counsel "denied crucial materials" from Petitioner and from the Court (Claims 6, 8, 9, and 13); (4) that counsel lied to the Fourth Circuit by stating that she had sent the certiorari form to Petitioner via email (Claim 10), by failing to inform the Court that Petitioner had fired her (Claim 11), and by failing to inform the Court of her conflicts with Petitioner (Claim 14); and (5) that counsel refused to seek a motion for additional time for Petitioner to file his *pro se* supplemental brief (Claim 15). Petitioner even goes so far as to

accuse appellate counsel of "defraud[ing] the court and her client through deceitful tactics and misrepresentation" (Claim 17) and of committing the felony of honest services fraud (Claim 7). In making these serious allegations, however, Petitioner does not explain what evidence he presumes underpins these claims. He makes only conclusory assertions, none of which demonstrate any prejudice.

Regarding his allegations challenging counsel's decisions as to which issues to present on appeal, such determinations fall within the wide discretion afforded appellate counsel. Counsel has the latitude to choose which claims have the most merit so as not to dilute potentially meritorious arguments with weak or frivolous ones. Regarding the allegations concerning counsel's failure to communicate with Petitioner and her suppression of evidence, Petitioner has not demonstrated what prejudice he may have suffered as a result.

As for Petitioner's claim that counsel lied to the Court of Appeals about sending a certiorari status form to Petitioner, Petitioner did not suffer any prejudice even if this allegation were true. The Fourth Circuit separately sent the certiorari status form to Petitioner on June 25, 2012. [See United States v. Pahutski, No. 11-4536, Doc. 65]. As to the assertion that counsel failed to ask for additional time for Petitioner to file his *pro se*

brief, there is no prejudice because Petitioner sought and obtained such an extension from the Court.  [Id., Docs. 36, 37].

Because Petitioner cannot overcome his heavy burden of demonstrating that appellate counsel's performance fell outside the wide range of reasonable performance or that he suffered any prejudice to the resolution of his appeal, all of his claims of ineffective assistance of appellate counsel must fail.

### D.    Remaining Grounds for Relief

In the remaining claims set forth in his amended § 2255 motion, Petitioner reasserts his argument regarding the Court's lack of subject matter jurisdiction based on the statute of limitations, his argument regarding the victim's FDIC insurance as an element of the crime, fatal variance, and violation of the Speedy Trial Act (collectively "Grounds 3, 5, 6, and 8").  [Doc. 9 at 49].  These claims are yet another challenge to the sufficiency of the evidence and the validity of his guilty plea.  The Court has already considered and ruled on the substance of these claims, Grounds 3, 5, 6, and 8.  For the reasons stated, these additional claims will be denied.

In his fourth claim for relief ("Ground 4"), Petitioner renews his argument regarding the withdrawal of his guilty plea and counsel's performance in failing to pursue withdrawal before sentencing.  In denying

Petitioner's oral motion to withdraw his guilty plea at sentencing, the Court found that Petitioner's motion should be denied. The Court noted that Petitioner pled guilty and waited more than two years to make his motion to withdraw his guilty plea. Petitioner was informed during his Rule 11 hearing that he had no absolute right to withdraw his guilty plea once accepted, and he acknowledged that he understood this limitation. Further, even two years after he moved to withdraw the plea, Petitioner remains unable to articulate any substantive reasons why he should be allowed the extraordinary remedy of withdrawing his solemn plea of guilty. For these reasons, this argument will be denied.

In his final claim, Petitioner raises a catch-all argument that various constitutional rights were violated due to: (1) his illegal seizure following an arrest on an illegal indictment; (2) a fatal variance; (3) a violation of the Speedy Trial Act; (4) a violation of his Eighth Amendment right to bail, and (5) a generic contention that his Fourteenth Amendment right to due process was violated.

The first three claims above have previously been reviewed and rejected herein. As for the claim regarding bail, Petitioner was released on an unsecured bond pending trial and was ordered to be detained after his 228-month sentence was imposed. Thus, to the extent Petitioner argues

his right to pretrial bail may have been violated, this argument is clearly without merit. Further, any argument that he was denied release following the imposition of sentence is without merit, as the Court concluded that the factors under 18 U.S.C. § 3143 favored detention.

Petitioner's final claim regarding due process will be denied as it presents only conclusory allegations regarding Petitioner's prosecution.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Petitioner's claims in his amended Section 2255 motion are without merit and the Court will therefore grant Respondent's motion to dismiss.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# **O R D E R**

**IT IS, THEREFORE, ORDERED** that Respondent's Motion to Dismiss [Doc. 19] is **GRANTED**, and Petitioner's Motion to Vacate, Set Aside or Correct Sentence, as amended [Docs. 1, 9] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: May 28, 2014

Martin Reidinger
United States District Judge